John K. Weston (PA # 26314)
Jeremy E. Abay (PA # 3167300
**SACKS WESTON DIAMOND, LLC**
*Attorneys for the Plaintiff and Class*
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
(215) 925-8200

**HAMBURG RUBIN MULLIN MAXWELL & LUPIN, PC**
William G. Roark (PA # 203699)
375 Morris Road
Lansdale, Pennsylvania 19446
(215) 661-0400

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BROWN DAUB CHEVROLET OF NAZARETH, INC., individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**VOLKSWAGEN GROUP OF AMERICA, INC.; VOLKSWAGEN OF AMERICA, INC.; and VOLKSWAGEN AKTIENGESELLSCHAFT, trading as VOLKSWAGEN GROUP and/or VOLKSWAGEN AG,**<br><br>**Defendants.** | **NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiff is a car dealership that marketed and sold the Chevrolet Cruze Diesel ("Cruze Diesel"), a diesel powered vehicle, beginning in 2014.

2.      Defendants marketed and sold Volkswagen ("VW") and Audi vehicles equipped with diesel engines.  Defendants referred to their diesel engines as "Clean Diesel" or Turbocharged Direct Injection "TDI" engines.

3.      In certain Clean Diesel/TDI models, Defendants installed an illegal "defeat device" that detects when a vehicle is undergoing official emissions testing and turns on full emissions controls to cheat the testing.  When the vehicle is not being tested, it emits pollutants at levels far beyond the standards allowed under federal and state law.[1] For example, the nitrogen oxides ($NO_X$) emitted by these vehicles is up to 40 times the permissible standards.

4.      From at least 2009 through 2015, Defendants engaged in deceptive advertising campaigns in which they made numerous false and misleading statements regarding their Clean Diesel/TDI vehicles.  Specifically, Defendants falsely represented that their Clean Diesel/TDI vehicles met all applicable federal and state emission.

5.      Defendants' deceptive advertising caused consumers to purchase their Clean Diesel/TDI vehicles instead of the diesel powered vehicles sold by Plaintiff and Class members.

6.      Plaintiff, individually and on behalf of all others similarly situated, now seeks an award of damages caused by Defendants' deceptive advertising, disgorgement of Defendants' profits earned through their deceptive advertising, an injunction prohibiting Defendants from further engaging in deceptive advertising, and other relief set forth below.

## THE PARTIES

7.      Plaintiff Brown Daub Chevrolet of Nazareth, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 819 Nazareth Pike, Nazareth, Pennsylvania.

8.      Defendant Volkswagen Group of America, Inc. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia.

---

[1] *See* EPA Notice of Violation (Sep. 18. 2015) (http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf) (last visited Oct. 22, 2015).

9.     Defendant Volkswagen of America, Inc. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia.

10.    Defendant Volkswagen Aktiengesellschaft is a corporation organized and existing under the laws of Germany, with its principal place of business located in Wolfsburg, Germany. It is the parent of defendant Volkswagen Group of America, Inc.

11.    All of the defendants regularly and systematically conduct business in each and every one of the fifty states

## JURISDICTION AND VENUE

12.    Jurisdiction of this action exists under 28 U.S.C. §1332(d)(2) because this is a class action in which the amount in controversy exceeds $5,000,000.00 and Plaintiff is a citizen of a state different from at least one defendant.

13.    This Court has personal jurisdiction over Defendants through Defendants' permanent, continuous, and regular contacts with the Commonwealth of Pennsylvania. Defendants regularly and purposefully solicit and engage in business with the residents of this Commonwealth.  Defendants' wrongful conduct, as alleged herein, was purposefully directed towards Pennsylvania, and affected consumers and competitors in the Commonwealth.

14.    Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Plaintiff is domiciled in this District.  Defendant have marketed, advertised, sold, and leased Clean Diesel/TDI vehicles in this District.

## FACTS

15.     From 2009 through 2015, Defendants designed, produced, and marketed automobiles equipped with diesel engines, which Defendants described as "Clean Diesel" or "TDI" engines.

16.     Defendants installed the Clean Diesel/TDI engines in at least the following automobiles:

       a.        MY 2009-2015 VW Jetta;

       b.        MY 2009-2015 VW Jetta SportWagen;

       c.        MY 2009-2015 VW Beetle;

       d.        MY 2012-2015 VW Beetle Convertible;

       e.        MY 2014-2015 VW Golf;

       f.        MY 2012-2015 VW Passat;

       g.        MY 2009-2015 Audi A3;

       h.        MY 2014 VW Touareg;

       i.        MY 2015 Porsche Cayenne; and,

       j.        MY 2016 Audi Q5.

17.     Defendants falsely represented that their Clean Diesel/TDI engines complied with all pertinent emissions laws and regulations.

18.     Defendants falsely represented that their Clean Diesel/TDI engines had mileage and other performance qualities which those engines, in fact, did not have.

19.     Defendants deliberately designed and installed in each of the Clean Diesel/TDI engines a system which would provide false emissions data during emissions testing.  This "defeat device" was expressly designed to evade applicable emissions laws and regulations.

20.     By utilizing the defeat device, Defendants were able to mislead consumers into thinking that their Clean Diesel/TDI engines provided fuel economy and superior performance. Because of these advantages, Defendants were able to induce consumers into purchasing their diesel powered vehicles instead of the diesel powered vehicles marketed and sold by Plaintiff and Class members.

21.     In fact, the fuel economy of Clean Diesel/TDI engines was significantly lower than represented, and their superior performance was obtained at the cost of significant and illegal emissions of deadly chemical compounds.

22.     Defendants actively concealed their defeat device scheme, which was revealed to the public for the first time on September 18, 2015, by announcement of the EPA.  Prior to that time the scheme could not reasonably have been discovered by Plaintiff or by any member of the class in this action.

23.     Many of the false and misleading statements described above were made in numerous advertisements to the consumer marketplace.  Such false and misleading statements included, without limitation:

        a.      With the TDI® clean diesel, Audi is pioneering the way for the vehicles and fuels of tomorrow. 12% lower $CO_2$ emissions than gasoline, TDI® is kind to the planet and has superior fuel efficiency combined with more torque and quick acceleration. An unbeatable combination.[2]

--------

[2] *See* https://web.archive.org/web/20150928180733/http://www.audiusa.com/technology/efficiency/tdi (last visited Oct. 22, 2015).

b.      Stinky, smoky, and sluggish.  Those old diesel realities no longer apply. Enter TDI Clean Diesel. Ultra-low-sulfur fuel, direct injection technology, and extreme efficiency.  We've ushered in a new era of diesel.[3]

c.      We used to think of diesel as black clouds of smoke and noxious fumes. But that was then.  **Now we have Clean Diesel that meets the highest standards in all 50 states**, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner. (Emphasis Added).

d.      With Clean Diesel technology and ultra-low sulfur diesel fuel, we'll generate a lot less smog in the air.  "Thanks," in advance, from the environment.[4]

e.      If one-third of Americans switched to Clean Diesel vehicles, we would save approximately 1.4 million barrels of oil a day. In turn, we'd help reduce our carbon footprint by about 532 million pounds of $CO_2$. And that's like planting about 600,000 trees, every single day.[5]

f.      Moreover, the Jetta Clean TDI also fulfils stringent Californian emission standards. This was achieved through modifications within the engine and by implementing an exhaust treatment system developed especially by Volkswagen and which reduces nitrogen oxide emissions (NOx) by up to 90 percent.[6]

g.      It's also good for the environment because it puts out 25% less greenhouse gas emissions than what a gasoline engine would. And thanks to the uniqueness of the TDI motor,

---

[3] *See* https://web.archive.org/web/20150816221300/http://www.vw.com/features/clean-diesel/ (last visited Oct. 22, 2015).
*See* https://web.archive.org/web/20150801070911/http://clearlybetterdiesel.org/#environment (last visited Oct. 22, 2015).
[4] *See* https://web.archive.org/web/20150801070911/http://clearlybetterdiesel.org/#environment-right (last visited Oct. 22, 2015).
[5] *See* https://web.archive.org/web/20150801070911/http://clearlybetterdiesel.org/#environment-left (last visited Oct. 22, 2015).
[6] *See* http://www.volkswagenag.com/content/vwcorp/info_center/en/news/2008/10/vw_in_fuel_economy_guide.html (last visited Oct. 22, 2015).

it cuts out the particulate emissions by 90% and the emissions of nitrous oxide are cut by 95%. So, a very very clean running engine. **Clean enough to be certified in all 50 states.** It's just like driving a high-powered gasoline engine so you are not giving up one bit of the driving experience that you'd expect from a regular gasoline engine.[7] (Emphasis Added).

       h.     Diesels have a reputation for being dirty. But the advanced technology in Volkswagen TDI clean diesels makes that a thing of the past. To demonstrate just how clean clean diesel really is, we test the new Volkswagen Touareg TDI against a traditional diesel. Can TDI clean diesel technology really reduce sooty emissions by 95%? The proof is in the coffee filters.[8]

24.    Beginning in 2014, Plaintiff marketed and sold the Cruze Diesel in competition with the vehicles identified in paragraph 14.

25.    Among other things, Defendants' wrongful conduct negatively impacted the price and sale of the Cruze Diesel, thereby damaging Plaintiff.

## CLASS ALLEGATIONS

26.    Plaintiff brings this action under Fed. R. Civ. P. 23(b)(2) and 23(b)(3), on behalf of itself and a national class consisting of all auto dealerships that marketed and sold diesel powered automobiles in competition with Defendants.

27.    Plaintiff also brings this action, under the same rules, on behalf of all auto dealerships that marketed and sold diesel powered automobiles in competition with Defendants in the Commonwealth of Pennsylvania.

---

[7] *See* http://www.businessinsider.com/volkswagen-preps-for-a-diesel-revolution-2009-10 (last visited Oct. 22, 2015).
[8] *See* https://web.archive.org/web/20100103120720/http://tdi.vw.com/a-coffee-filter-shows-how-clean-tdi-clean-diesel-is/ (last visited Oct. 22, 2015).

28.     The Pennsylvania class consists of hundreds, perhaps thousands, of organizations. The national class may exceed several hundred thousand members.  Class members of readily identifiable from public and industry records.  Joinder of all class members is not practical.

29.     Excluded from the class are Defendants; their officers and employees; and any individuals or organizations who, at the time of class certification, have settled the claims asserted in this action.

30.     Questions of law and fact common to the classes predominate over individual issues, and include the following:

a.      Whether Defendants deliberately designed and installed the aforedescribed defeat devices in the automobiles equipped with Clean Diesel/TDI engines;

b.      Whether Defendants deliberately concealed the existence of the defeat devices in the automobiles equipped with Clean Diesel/TDI engines.

c.      Whether Defendants falsely represented the performance of the automobiles equipped with Clean Diesel/TDI engines;

d.      Whether Defendants falsely represented the legal compliance of the automobiles equipped with Clean Diesel/TDI engines;

e.      Whether Defendants' misrepresentations caused consumers to purchase their vehicles instead of vehicles sold by Plaintiff and Class members;

f.      Whether Defendants' deceptive advertising caused Plaintiff and Class members to suffer expenses including, without limitation, increased advertising expenditure and price erosion of competitive vehicles;

g.      Whether class members have, or will, sustain additional damages.

31.     Plaintiff's claims are typical of the claims of all class members, all of whom sustained damages from Defendant's conduct.

32.     Plaintiff is an adequate class representative whose interests do not conflict with the interests of other class members, and its counsel is competent and qualified to represent the classes described in this complaint.

33.     A class action is superior to all other judicial methods for adjudication of this controversy.  Class treatment imposes no unusual management difficulties in this case.  Class members' individual pursuit of their claims against these massive defendants would impose enormous burdens upon the class members, far out of proportion to the relief sought; would unnecessarily clog the courts of this country with an unnecessary multiplicity of lawsuits; and would create a likelihood of inconsistent or contradictory judgments.

### COUNT I – VIOLATIONS OF THE LANHAM ACT
(Plaintiff and National Class against All Defendants)

34.     Plaintiff incorporates herein by reference the preceding paragraphs of this complaint.

35.     Section 43(A) of the Lanham Act prohibits an organization from making false or misleading descriptions of fact, or false or misleading representations of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.  15 U.S.C. § 1225(a).

36.     As described herein, Defendants statements regarding the nature, characteristics, and qualities of the Clean Diesel/TDI vehicles were literally false.

37.     As described herein, Defendants made misleading statements regarding the nature, characteristics, and qualities that misled a substantial segment of consumers in the diesel automobile marketplace.

9

38.     Defendants' false and misleading statements were targeted at the marketplace and general purchasing public in order to influence consumers to purchase their diesel automobiles instead of those sold by Plaintiff and Class members.

39.     Many of Defendants' false and misleading statements were part of a "green" marketing[9] campaign initiated in 2009 for their Clean Diesel/TDI vehicles.

40.     Defendants' false and misleading statements, described herein, caused consumers to purchase their Clean Diesel/TDI vehicles instead of the vehicles sold by Plaintiff and Class members.

41.     The vehicles identified in paragraph 14 traveled in interstate commerce.

42.     Defendants' false and misleading statements, described herein, caused harm to Plaintiff and members of both Classes.  Such harm includes, without limitation: reduced sales; price erosion; additional marking expenses; and loss of good will in the diesel automobile marketplace.

43.     Defendants' wrongful conduct, described herein, was willful.

## COUNT II – COMMON LAW UNFAIR COMPETITION
(Plaintiff and Pennsylvania Class against All Defendants)

44.     Plaintiff incorporates herein by reference the preceding paragraphs of this complaint.

45.     Pennsylvania courts recognize a cause of action for the common law tort of unfair competition.

46.     As described herein, Defendants made numerous misrepresentations regarding the nature, characteristics, and qualities of the Clean Diesel/TDI vehicles.

---

[9] Green marketing is the marketing of products that are presumed to be environmentally preferable to others.  *See* U.S. Congress, Office of Technology Assessment, *Green Products by Design: Choices for a Cleaner Environment*, OTA-E-541 (1992).

47.     Defendants' misrepresentations were intended to induce consumers to purchase their Clean Diesel/TDI vehicles instead of the vehicles sold by Plaintiff and members of the Pennsylvania Class.

48.     Defendants' misrepresentations gave them an unfair advantage over Plaintiff and members of the Pennsylvania Class.

49.     Defendants' misrepresentations caused harm to Plaintiff and members of the Pennsylvania Class.  Such harm includes, without limitation: reduced sales; price erosion; additional marking expenses; and loss of good will in the diesel automobile marketplace.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, on behalf of himself and members of the classes, prays for the following relief:

a.      An order certifying the class described above;

b.      An award of treble damages for all harm caused by Defendants' wrongful conduct;

c.      An award of actual damages for all harm caused by Defendants' wrongful conduct;

d.      An award of punitive damages for Defendants' tortious conduct;

e.      Disgorgement of profits earned by Defendants as a result of their wrongful conduct;

f.      Injunctive relief prohibiting Defendants from engaging in the deceptive advertising described herein;

g.      An award of prejudgment and post-judgment interest;

h.      An award of costs and attorney's fees;

i.      All forms of damages attributable to Defendants' violations as alleged

herein; and,

j.      All other relief the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury.


s/   John K. Weston
JOHN K. WESTON (PA # 26314)
JEREMY E. ABAY (PA # 316730)
**SACKS WESTON DIAMOND, LLC**
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
(215) 925-8200

WILLIAM G. ROARK (PA # 203699)
**HAMBURG RUBIN MULLIN MAXWELL & LUPIN, PC**
375 Morris Road
Lansdale, Pennsylvania 19446
(215) 661-0400


Date:   November 9, 2015